**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ZARSHED ERGASHOV, *et al.*, | * | |
| *Plaintiffs* | * | |
| | | Civil Action No. 1-15-cv-01007-JFM |
| v. | * | |
| GLOBAL DYNAMIC | * | |
| TRANSPORTATION, LLC, *et al.* | | |
| | * | |
| *Defendants* | | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO**
**DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants Global Dynamic Transportation, LLC ("GDT"), Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili (collectively "GDT Defendants"), through their undersigned counsel, and pursuant to Rules (12)(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, submit the following Memorandum of Points and Authorities in support of their Motion to Dismiss against the Second Amended Complaint (ECF 15) filed by Plaintiffs Zarshed Ergashov, Djamshed Ergashov, Khurshed Ergashov, Alisher Khamrokoulov, Farhod Yarov and Bobir Yarov (collectively "Plaintiffs").

## I.    INTRODUCTION

This case involves claims asserted by six individual Plaintiffs against GDT, an entity for which Plaintiffs performed local deliveries of donuts.  Plaintiffs' allegations state that they did not engage in interstate commerce, stating they were only responsible for delivering "products from a production facility located in Elkridge, Maryland, to retail locations, *all of which, without exception, were located in the State of Maryland, primarily in the Baltimore area.*"

Despite conceding that they did not engage in interstate commerce, Plaintiffs have proceeded to file suit for alleged unpaid wages pursuant to the Fair Labor Standards Act ("FLSA").  All of the claims Plaintiffs allege against GDT are also asserted against Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili on theories of individual liability.

Accepting Plaintiffs' allegations as true and construing all reasonable inferences in their favor, Plaintiffs are not entitled to the protections of the FLSA since the GDT Defendants did not engage in interstate commerce.  Further, in the absence of an FLSA claim, the Court does not have subject-matter jurisdiction to hear Plaintiffs' claims.

Plaintiffs further rely upon their FLSA claim for the purpose of establishing ancillary/supplemental jurisdiction upon their remaining State law claims, all of which overlap and seek relief based upon the same set of facts.  To the extent their FLSA claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the Plaintiffs' remaining claims and, instead, dismiss Plaintiffs' lawsuit in its entirety.

In the alternative, and to the extent Plaintiffs' FLSA claim is not dismissed, Defendants seek dismissal of Plaintiffs' claims seeking to assign individual liability to Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili.  These allegations consist entirely of conclusory statements of fact and law which are insufficient to state claims for relief.  Accordingly, Plaintiffs claims against the individual defendants should be dismissed, in the instance this matter is not dismissed entirely.

2

## II.      PROCEDURAL BACKGROUND

Plaintiffs filed this action on April 8, 2015.  ECF 1.  On May 20, 2015, prior to the GDT Defendants filing a response, Plaintiffs filed a first amended complaint.  ECF 7.[1]  On June 8, 2015, the GDT Defendants filed a motion to dismiss.  ECF 9.  On July 13, 2015, the parties filed a joint stipulation regarding Plaintiffs' desire to file a second amended complaint and for ECF 9 to, therefore, be deemed moot.  ECF 11.  The parties' joint stipulation was approved by the Court on July 17, 2015.  ECF 13.  Thereafter, Plaintiffs' second amended complaint, which is now the operative pleading document, was docketed on July 21, 2015.[2]  ECF 15.  The GDT Defendants now timely file the instant Motion to Dismiss in response to ECF 15.[3]

## III.     STATEMENT OF FACTS

### A.      *Plaintiffs concede that they did not engage in interstate commerce.*

During various points from 2013–2015, Plaintiffs performed services for the GDT Defendants as local delivery drivers for the purpose of "deliver[ing] donuts and similar products."[4]  ECF 15 (Second Amd'd Comp.), ¶¶ 9–10.  Plaintiffs' do not allege that the GDT Defendants' annual gross volume of sales or business was in an amount of at least $500,000.

In describing Plaintiffs' work as local delivery drivers, their allegations expressly state that GDT did *not* engage in interstate commerce.  Continually reemphasizing this point in their pleadings, Plaintiffs state the following, all of which are verbatim quotes from their pleadings:

---

[1] Plaintiffs initially attempted to file a first amended complaint on May 19, 2015.  ECF 5. However, this filing was deemed to have been filed in error.  ECF 6.

[2] The second amended complaint serves to, *inter alia*, add Eight P CPL, LLC as an additional defendant in this matter.  Eight P CPL is represented by separate counsel.  On August 5, 2015, Eight P CPL filed its own motion to dismiss.  ECF 18.

[3] On August 6, 2015, the parties filed a joint stipulation providing the GDT Defendants through August 12, 2015 to file their response to ECF 15.

[4] For purposes of this Motion only, the allegations of the Second Amended Complaint are taken as true, and all reasonable inferences are construed in Plaintiffs' favor. *See, e.g.*, *Tobey v. Jone*s, 706 F.3d 379, 383 (4th Cir. 2013).

- "Plaintiffs were employed specifically and exclusively to work pursuant to an arrangement to deliver donuts and similar products from a production facility located in Elkridge, Maryland, to retail locations, all of which, without exception, were located in the State of Maryland, primarily in the Baltimore area." *Id.* at ¶ 10.

- "Plaintiffs were assigned specific routes with multiple retail locations, all, without exception, in the State of Maryland, to which they were to make deliveries of donuts and other similar products from the Baltimore facility, where the products were manufactured." *Id.* at ¶ 12 (first sentence).

- "The products would be sold at retail or consumed at the Maryland retail locations." *Id.* (second sentence).

- "None of the routes involved deliveries to any location outside the State of Maryland or any travel to any location outside the State of Maryland." *Id.* (third sentence).

- "The routes were such that Plaintiffs did not have to, and could not reasonably be expected to, ever cross any borders of the State of Maryland while on duty, be it while making deliveries or on return trips." *Id.* (fourth sentence).

- "Over the course of Plaintiffs' employment by Defendants, Plaintiffs never had to travel outside the State of Maryland or cross any borders of the State of Maryland while on duty." *Id.* (fifth sentence).

- "Over the course of Plaintiffs' employment by Defendants, Plaintiffs could not be, and were not, reasonably expected to ever cross any border of the State of Maryland while on duty or make any pick-ups or deliveries outside the State of Maryland." *Id.* (sixth sentence).

Plaintiffs statement regarding venue also asserts that "all of the events that gave rise to the present controversy occurred in Maryland." *Id.* at ¶ 8.  Accordingly, Plaintiffs allegations clearly acknowledge that they did not engage in interstate commerce.

4

**B.**     ***Plaintiffs allegations with regard to individual liability.***

With regard to the statements contained in Plaintiffs' pleadings which allege individual liability against Defendants Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili, their allegations are limited to one sentence for each individual defendant, respectively.  Indeed, Plaintiffs assert the word-for-word identical allegations with respect to each of the three defendants, alleging only that "on information and belief" each defendant:

> [E]xercised control over Global Dynamic Transportation, LLC and its operations and finances, and had the power to hire, terminate, discipline, and direct the activities of its employees and contractors, including, without limitation, Plaintiffs, and determine the terms and conditions of their employment or engagement.

*Id.* at ¶¶ 16–18.  No further "facts" are specifically alleged for the purpose of establishing personal liability with regard to the three individual defendants.[5]

## IV.     LEGAL STANDARD

**A.**     ***Rule 12(b)(1).***

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1).  Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n. 4 (4th Cir.1999) (quoting 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3d ed.1998)).  "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

When federal question jurisdiction is invoked under 28 U.S.C. § 1331, as Plaintiffs have

---

[5] As discussed further in section V(c), *infra*, the majority of the remaining allegations contained in Plaintiffs' Complaint are generically made simply with regard to "Defendants," but without distinguishing amongst any of the four seperate GDT Defendants.

done here,[6] "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   Whether a plaintiff's claims arise under federal law requires application of the well-pleaded complaint rule.  *Ali v. Giant Food LLC/Stop & Shop Supermarket Co.*, 595 F.Supp.2d 618, 621 (D.Md.2009) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).  "[O]nly when a federal question is presented on the face of the plaintiff's properly pleaded complaint," does federal jurisdiction exist.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

## B.    *Rule 12(b)(6).*

In deciding a 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In other words, "the factual allegations in the complaint [must be] 'enough to raise a right to relief above the speculative level.'"  *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).   "'[T]he court need accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"   *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quoting *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009)).

---

[6] ECF 15 (Second Amd'd Comp.), ¶ 7 (stating "This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a matter arising under the laws of the United States of America").

## V.       ARGUMENT AND AUTHORITIES

### A.       *Plaintiffs' FLSA claims must be dismissed based upon their own statements that they do not engage in interstate commerce.*

The FLSA's overtime coverage applies in two scenarios.   First, in what has been termed "individual coverage," section 207 applies to any *employee* "who in any workweek is engaged in commerce or in the production of goods for commerce[.]"   29 U.S.C. § 207(a)(1). Alternatively, in what has been termed "enterprise coverage," section 207 applies to any *employer* that is "an enterprise engaged in commerce or in the production of goods for commerce[.]"   *Id.*

FLSA coverage (individual or enterprise) is an essential element of a plaintiff's FLSA claim.   *See, e.g., Chao v. Hotel Oasis, Inc.,* 493 F.3d 26, 33 (1st Cir.2007) (holding that the annual dollar value requirement of *enterprise* coverage is "an element of the claim"); *Morataya v. Nancy's Kitchen of Silver Spring, Inc .,* Civ. No. GJH–13–01888, 2015 WL 165305, at *5–6 (D.Md. Jan. 12, 2015) ("A plaintiff wishing to invoke the protections offered by the FLSA must satisfy the requirements for either individual or enterprise coverage."); *Gilbert v. Freshbikes, LLC,* 32 F.Supp.3d 594, 601 (D.Md. 2014) ( "[W]hether a defendant is an employer as defined by the FLSA is an element of the plaintiff's meritorious FLSA claim[.]").   Each form of coverage is discussed individually below.

### i.       Enterprise coverage.

Enterprise coverage exists where the enterprise as a whole is "engaged in commerce or in the production of goods for commerce."   29 U.S.C. § 207(a)(1).   The term "commerce" is a key component in both individual and enterprise coverage, and is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."   29 U.S .C. § 203(b).   Further, the phrase enterprise "engaged

in commerce or  in  the  production  of  goods  for commerce" is  a  necessary  component
in enterprise coverage, and is defined as an enterprise that:

> (i)      has employees engaged in commerce or in the production of goods for
> commerce, or that has employees handling, selling, or otherwise working on
> goods or materials that have been moved in or produced for commerce by any
> person;
>
> *and*
>
> (ii)      is an enterprise whose annual gross volume of sales made or business done
> is not less than $500,000 (exclusive of excise taxes at the retail level that are
> separately stated).

29 U.S.C. § 203(s)(l)(A); *Diaz v. HBT, Inc.,* RWT11–1856, 2012 WL 294749, *2 (D.Md. Jan.31,
2012); *see also Russell v. Continental Restaurant, Inc.,* 430 F.Supp.2d 521, 523–27 (D.Md.
2006).

"Initially, a plaintiff must demonstrate that the employer has annual gross volume of sales
or business  done  of  $500,000  or  more."  *Diaz*,  2012  WL 294749, at *2 (citing *Russell,* 430
F.Supp.2d at 524).  Only then does the court proceed to determine whether the first prong (*i.e.*,
interstate commerce) of the enterprise coverage standard is satisfied.  *Diaz,* 2012 WL 294749,
*2.  Plaintiffs' pleadings are absent any allegations that the GDT Defendants have annual gross
volume of sales or business done of $500,000 or more.  Accordingly, the analysis can end here
and Plaintiffs FLSA claims can be properly dismissed.

Nonetheless,  even  assuming,  *arguendo*,  that  Plaintiffs  had  alleged  that  the  GDT
Defendants conducted at least $500,000 in annual business, their pleadings concede that the first
prong  of  the  enterprise  coverage  standard  is  not  satisfied.  This prong requires allegations of
interstate  commerce.   Here  Plaintiffs  complaint  is  replete  with  concessions  that  they  never
engaged  in  interstate  commerce.   ECF 15 (Second Amd'd Comp.)  ¶¶ 10, 12.  To be sure,
Plaintiffs have included at least seven separate sentences stating they did not conduct interstate

commerce.  *Id.*  Rather than regurgitate Plaintiffs' allegations contained in paragraphs 10 and 12 of their Second Amended Complaint (ECF 15), the GDT Defendants simply incorporate those statements by reference.[7]  *See id.*  Therein, Plaintiffs clearly concede that they did not engage in interstate commerce during their employment with the GDT Defendants.

Absent allegations of both interstate commerce and annual business in excess of $500,000, Plaintiffs fail to establish enterprise coverage under the FLSA.

ii.    Individual coverage.

To be eligible for "individual coverage," Plaintiffs must show that they were "engaged in" commerce; that is, they regularly and "directly participat[ed] in the actual movement of persons or things in interstate commerce" by "working for an instrumentality of interstate commerce[.]"  *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006) (*citing McLeod v. Threlkeld,* 319 U.S. 491, 493–98 (1943); 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005)); *see also* 29 U.S.C. § 207(a)(1) (mandating time-and-a-half for "employees . . . engaged in [interstate] commerce or in the production of goods for [interstate] commerce"); 29 C.F.R. § 776.1 (addressing the requirement that the employee be engaged in commerce).

As noted, the allegations contained in paragraphs 10 and 12 of Plaintiffs' Second Amended Complaint (ECF 15), incorporated herein by reference, confirm that they did not engage in interstate commerce.  Accordingly, there is no dispute over this fact and their FLSA claim must be dismissed.

---

[7] These allegations are outlined in bullet points in section III(A), above.

**B.**   ***The Court should decline to exercise ancillary/supplemental jurisdiction over Plaintiffs' remaining state law claims.***

Plaintiffs allege that the Court has supplemental jurisdiction over their State law claims, which are presented as their "Second" claim (MWHL and MWPCL), "Third" claim (breach of contract) and "Forth" claim ("unjust enrichment).  ECF 15 (Second Amd'd Comp.), ¶ 7 (citing 28 U.S.C. § 1367).  However, to the extent the Court dismisses Plaintiffs' FLSA claim, then the only claims remaining will be Plaintiffs' allegations relating to violations of State law.

The Court has discretion as to whether to exercise supplemental jurisdiction and may properly decline to exercise this authority when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *Russell v. Cont'l Rest., Inc.*, 430 F.Supp.2d 521, 524 (D.Md. 2006) (J. Williams).   "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995) (citing *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) and *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993)).

Plaintiffs have an adequate alternate forum byway of filing their claims in State court, and the parties have not yet conducted any discovery in this case.  As such, this Court should decline to exercise its supplemental jurisdiction over the remaining State law claims.

**C.**   ***In the alternative, the Court should dismiss Plaintiffs' claims alleging individual liability against Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili.***

In addition to suing GDT, Plaintiffs have also proceeded to sue Valeri Biganishvill, David Chkhartishvili and Besiki Chkhartishvili (collectively "Individual Defendants")

individually under the FLSA, MWHL and MWPCL.[8]  In the event Plaintiffs' FLSA claims are not dismissed, the GDT Defendants move, in the alternative, for dismissal of the claims alleging individual liability.

Plaintiffs sue the Individual Defendants under the FLSA, MWHL and MWPCL because they maintain that the Individual Defendants are "employers" under these three statutes.  ECF 15 (Second Amd'd Comp.), ¶¶ 16–18.[9]  The FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).  The MWHL defines the term "employer" in a similar fashion as including "a person who acts directly or indirectly in the interest of another employer with an employee."  Md. Code Ann., Lab. & Empl. § 3-401(b).  As a result of the similarity between the two statutes, Maryland courts interpret the MWHL consistent with the FLSA for purposes of determining who constitutes an "employer" under the MWHL.  *Newell v. Runnels*, 407 Md. 578, 651 n.34, 967 A.2d 729, 772 (2009).  Thus, for the purposes of this Motion, the analysis is the same for both the FLSA and MWHL.  *Id.*  Maryland courts have also interpreted the MWPCL as having a similar definition for employer.

An employee that meets the FLSA's definition of the term "employer" is jointly and severally liable for any unpaid wages owed by the traditional employer.  *See Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir.1989); *Smith v. ABC Training Center of Md., Inc.*, JFM-13-0306, 2013 WL 3984630 (D. Md. Aug. 1, 2013).  In determining whether an individual is an

---

[8] These claims are outlined in Plaintiffs' "First Claim for Relief" (ECF 15, pp. 9–10) and "Second Claim for Relief" (ECF 15, pp 10–11).

[9] Plaintiffs make the same word-for-word identical statement for each of the Individual Defendants, alleging each defendant was "Plaintiffs' employer within the meaning of the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Labor & Empl. §§ 3- 401 *et seq.*, and the Maryland Wage Payment Collection Act, Md. Code Ann., Labor & Empl. §§ 3-501 *et seq.*"  ECF 15 (Second Amd'd Comp.), ¶¶ 16–18.

"employer" for purposes of the FLSA, courts look to the "economic realities" of an individual's role within a corporation.  *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006) (examining economic realities test for purposes of determining whether an individual is an employee for purposes of FLSA); *see Pearson v. Prof'l 50 States Prot., LLC*, 2010 U.S. Dist. LEXIS 113859 at *10–11 (D. Md. Oct. 26, 2010) (Bennett, J.) (citing cases).[10]  Only where an individual "exercises a high level of control for the FLSA violations of a corporation" is imposition of personal liability appropriate.  *Pearson, 2010 U.S. Dist. LEXIS 113859* at *11, (citing *Chao v. Self Pride, Inc.*, 2005 U.S. Dist. LEXIS 11653, *12 (D. Md. 2005)).

In analyzing the economic realities, courts look to the totality of the circumstances and consider such things as the individual's job description, individual's financial interest in the enterprise, and whether the individual exercises control over the employment relationship.  *Pearson*, 2010 U.S. Dist. LEXI 113859 at *10–11 (citing *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)).  The higher degree of control over the enterprise, the more likely the individual is exposed to liability.  *Id.*

Generally, "[w]here an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the [FLSA] and is subject to liability."  *Boucher v. Shaw,* 572 F.3d 1087, 1091 (9th Cir. 2009); s*ee also Haybarger v. Lawrence Cty. Adult Prob. & Parole,* 667 F.3d 408, 418 n.8 (3d Cir. 2012) (explaining "economic reality" test); *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (discussing the four-factor "economic

---

[10] The Maryland Court of Special Appeals has held that the "economic realities" test is also used for determining individual liability under the MWPCL.  *Campusano v. Lusitano Const. LLC*, 208 Md. App. 29, 36 (2012).  The Court stated that due to the MWPCL's expansive definition of "employer," it is shown that "the economic reality test governs the definition of 'employer' in [the MWPCL]."  *Id.*

reality" test for control with respect to corporate officers); *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993) (stating that "a true employer-employee relationship" involves a "'bargained-for exchange of labor' for mutual economic gain") (citation omitted).  Because the MWHL is the state analogue to the FLSA, this same "economic realities" test is used to determine the applicability of that statute.  *Newell v. Runnels*, 407 Md. 528, 650, 967 A.2d 729, 771 (2009); s*ee Iraheta v. Lam Yuen, LLC,* DKC-12-1426, 2012 WL 5995689, at *4 (D. Md. Nov. 9, 2012); *Caseres v. S&R Mgmt. Co.,* AW-12-1358, 2012 WL 5250561, at *4 (D. Md. Oct. 24, 2012).

As noted, in attempting to impose personal liability, Plaintiffs only allege, "on information and belief," the same word-for-word identical statement with regard to each of the Individual Defendants, claiming they each:

> [E]xercised control over Global Dynamic Transportation, LLC and its operations and finances, and had the power to hire, terminate, discipline, and direct the activities of its employees and contractors, including, without limitation, Plaintiffs, and determine the terms and conditions of their employment or engagement.

ECF 15 (Second Amd'd Comp.), ¶¶ 16–18.

Plaintiffs' complaint does not contain a single specific *factual* allegation relating to the Individual Defendants which would establish that they took any action which, if true, would serve to satisfy the "economic realities" test or otherwise establish employer status under the FLSA or MWHL.  Rather, Plaintiffs' complaint contains only labels and conclusions, all of which are insufficient to "raise a right to relief" against the Individual Defendants "above the speculative level."  *See Twombly*, 550 U.S. at 555, 570 (a complaint must contain more than "labels and conclusions"; it must allege "enough facts to state a claim to relief that is plausible

on its face"); *Painter's Mill Grille, LLC*, 716 F.3d at 352 (Plaintiff's "allegations are conclusory and speculative and therefore insufficient to support a plausible claim for relief").

The balance of the allegations in the complaint are generally directed towards "Defendants," without any distinction amongst GDT and the three Individual Defendants. By way of example, Plaintiffs allege that:

- "*Defendants* employed Plaintiffs as drivers in 2013, 2014 and 2015." ECF 15 (Second Amd'd Comp.), ¶ 9.

- "While in the employ of *Defendants*, Plaintiffs routinely worked over 40 hours per workweek[.]" *Id.* at ¶ 19.

- "*Defendants* terminated the employment of all six Plaintiffs." (ECF 15, ¶ 20)

(emphasis added.)  The complaint, however, is silent as to which of the four defendants Plaintiffs allege performed any of these alleged actions.

Plaintiffs do not assert any allegations relating to the Individual Defendants' respective job descriptions, job titles, the extent of their respective operational control over GDT, or how the Individual Defendants exercised control over the employment relationship with Plaintiffs.[11] Without these allegations, Plaintiffs have not pled *facts* sufficient to satisfy the "economic realities" test.

Moreover, all of the allegations set forth in paragraphs 16–18 of Plaintiffs' Second Amended Complaint are made "on information and belief."  Such conclusory allegations parallel those found to be insufficient in *Wright v. Lehigh Valley Hosp. & Health Network*, Civ.A. 10-431, 2011 U.S. Dist. LEXIS 68012 (E.D. Pa. June 23, 2011) (Rapoport, J.).  In *Wright*, which also involved claimed FLSA violations, the plaintiff alleged, in part, that the individual

---

[11] Rather, in an attempt to parrot the elements of the economic realities test, Plaintiffs simply allege that "on information and belief," all of the Individual Defendants "exercised control over [GDT] and its operations and finances[.]"  ECF 15, ¶¶ 16–18.

14

defendants were her employer for purposes of the FLSA because "upon information and belief" each of the individuals had "operational control over significant aspects of [defendants'] day-to-day . . . and were ultimately responsible for ensuring [defendants'] compliance with [the] FLSA." *Wright*, 2011 U.S. Dist. LEXIS 68012 at *4. As noted by the Court in *Wright*, such conclusory allegations made upon information and belief are not, in reality, factual allegations. *Id.* at *9–10. Instead, they merely parrot the legal requirements for establishing individual liability under the FLSA. *Id.*

While pleading a complaint "upon information and belief" is not a fatal pleading defect under *Twombly* or *Iqbal*, plaintiffs must, when their complaint is based upon allegations plead upon information and belief, plead the "factual basis asserted to support the beliefs pled." *Id.* at *8–10; *accord Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 224 (S.D.N.Y. 2011) (allegation that "upon information and belief" two companies "disregarded corporate formalities and have shared offices and officers and directors" found to be "manifestly insufficient" to state an alter ego claim). None of the Plaintiffs' allegations pled upon information and belief provide the necessary factual basis to support the belief alleged.

Moreover, there are no allegations that the Individual Defendants (1) have an ownership interest in GDT, (2) can set its wage and hour policies, (3) are responsible for keeping wage and hour records, (4) had any role in setting the hours which Plaintiffs allege to have worked, or (5) even had knowledge of the overtime hours which Plaintiffs allege to have work. *See Soles v. Zartman Const., Inc.*, 2013 WL 1207818, at *6-7 (M.D. Pa. Mar. 8, 2013) *report and recommendation adopted,* 2013 WL 1207737 (M.D. Pa. Mar. 25, 2013) (granting motion to dismiss FLSA claim against individual defendant where there were no allegations that individual

defendant had the ability to hire and fire employees, to control work schedules of employees, to determine employee's compensation rate, or to maintain employment records); *Diaz v. Consortium for Worker Educ., Inc.*, 2010 WL 3910280, at *3–4 (S.D.N.Y. Sept. 28, 2010) (granting motion to dismiss FLSA claim against because of the absence of factual allegations to meet economic realities test); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (granting motion to dismiss FLSA claim against individual defendant for absence of factual allegations sufficient to demonstrate individual was "employer" for purposes of FLSA).

Plaintiffs have alleged no facts, as required to satisfy the holdings in *Twombly* and *Iqbal* which, if true, would establish that the Individual Defendants were the employer to any of the Plaintiffs under the FLSA or MWHL.  Accordingly, the FLSA and MWHL claims brought against the Individual Defendants should be dismissed.

## VI.    CONCLUSION

Based upon the foregoing, Defendants respectfully submit that Plaintiffs' Second Amended Complaint should be dismissed in its entirety and with prejudice pursuant to Federal Rules 12(b)(1) and/or 12(b)(6).  Defendants further respectfully request that the Court award them all of the reasonable costs and attorneys' fees actually incurred, and any other such relief as the Court deems proper.

Dated: August 12, 2015                              Respectfully submitted,

                                                    _____/s/_____
                                                    Judd G. Millman (Fed Bar No. 18212)
                                                      judd@luchanskylaw.com
                                                    Bruce M. Luchansky (Fed. Bar No. 08439)
                                                      lucky@luchanskylaw.com
                                                    LUCHANSKY LAW
                                                    606 Bosley Avenue, Suite 3B
                                                    Towson, Maryland 21204
                                                    Telephone: (410) 522-1020
                                                    Facsimile: (410) 522-1021