# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ZARSHED ERGASHOV, *et al.* *

v. * Civil No. JFM-15-1007

GLOBAL DYNAMIC TRANSPORTATION,
LLC, *et. al.*

******

## MEMORANDUM

Plaintiffs Zarshed Ergashov, Djamshed Ergashov, Khurshed Ergashov, Alisher Khamrokulov, Farhod Yarov, and Bobir Yarov (collectively "plaintiffs") bring suit against defendants Global Dynamic Transportation, LLC, Eight P CPL, LLC, Valeri Biganishvili, David Chkhartishvili, Besiki Chkhartishvili, and Does 1-10 (collectively "defendants") for actions arising out of an alleged employment relationship. Specifically, plaintiffs assert claims for breach of contract, unjust enrichment, and violations of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. § 3-501 *et seq.*, and Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* Now pending is plaintiffs' motion for leave to file a third amended complaint and defendants' motion to dismiss plaintiffs' complaint. I have fully considered both motions, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons below, plaintiffs' motion for leave to file a third amended complaint is granted and defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The present dispute arises out of an alleged employment relationship between plaintiffs and defendants. (ECF No. 15, ¶ 9). Plaintiffs allege Eight P CPL, LLC, and Global Dynamic Transportation, LLC, Valeri Biganishvili, David Chkhartishvili, and Besiki Chkhartishvili

1

(collectively "GDT defendants") formed a partnership to deliver donuts and similar products from a facility in Elkridge, Maryland, owned by Eight P CPL, LLC, to retail locations throughout Maryland, primarily in Baltimore. Three of the plaintiffs allege they began working for defendants in April 2013, two others in February 2014, and one in May 2014. While employed by defendants, plaintiffs allege they routinely worked seven-day workweeks of 60 or 70 hours per week. *Id.* at ¶ 19. Plaintiffs allege defendants did not pay for the overtime work performed

On March 2, 2015, defendants terminated employment of the six plaintiffs. *Id.* at ¶ 20. Plaintiffs allege defendants did not fully compensate plaintiffs for wages owed to plaintiffs as of the date of termination. Plaintiffs further allege that defendants ordered a stop payment order on their last paychecks. *Id.* at ¶¶ 20–21. After plaintiffs brought the instant suit on April 8, 2015, defendants issued plaintiffs replacement checks and paid a portion of the wages owed to plaintiffs. Plaintiffs allege, however, defendants have still not paid overtime and refuse to pay their share of plaintiffs' payroll taxes.

Plaintiffs initially commenced suit on April 8, 2015, filed an amended complaint on May 20, 2015, and filed their second amended complaint on July 21, 2015. (ECF Nos. 1, 15). Defendant Eight P CPL, LLC filed a motion for judgment on the pleadings on August 5, 2015, which I denied. (ECF Nos. 18, 31). GDT defendants filed a motion to dismiss on August 12, 2015.[1] (ECF Nos. 21). Plaintiffs have also filed a motion for leave to submit a third amended complaint, which defendants oppose. (ECF Nos. 25, 29, 30).

## STANDARD

---

[1] Defendant Eight P CPL, LLC filed a motion to adopt the GDT defendants' motion to dismiss. (ECF No. 23). That motion is granted.

2

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Courts are not permitted, however, to afford the same deference to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint, relying on only well-pled factual allegations, must state a "plausible claim for relief." *Id.* at 678. The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680.

A defendant can file a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction under two theories. First, in the vein of a Rule 12(b)(6) motion, a defendant can argue "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The standard for this kind of challenge is identical to the standard used for a Rule 12(b)(6) challenge, *i.e.*, if, taking plaintiff's allegations as true, the plaintiff fails to allege sufficient facts to create subject matter jurisdiction, defendant's motion to dismiss must be granted. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Second, a defendant can directly challenge the jurisdictional allegations of a complaint. In contrast to the evidentiary standard for 12(b)(6) motions, under this theory, "[a] trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219.

3

Under both theories, plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## ANALYSIS

As a preliminary matter, plaintiffs' motion for leave to file a third amended complaint is granted. Fed. R. Civ. P. 15(a) requires that leave to file an amended complaint be "freely given when justice so requires." The Fourth Circuit, elaborating on this standard, has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the party of the moving party, or the amendment would have been futile." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007) (internal quotation marks and citations omitted).

Defendants proffer two arguments against plaintiffs' motion: (1) a third amendment would be futile; and (2) plaintiffs have acted in bad faith. As defendants' briefs acknowledge, their futility argument dovetails into their substantive arguments, which I discuss *infra*. (*See* ECF No. 30, pp. 2–4). Second, defendants accuse plaintiffs of amending their complaint in bad faith. Defendants' argument is without merit—defendants accuse plaintiffs of no more than amending their pleadings in response to defendants' concerns, which cannot rise to the level of bad faith. Therefore, to "give[] effect to the federal policy in favor of resolving cases on their merits instead of disposing them on technicalities," plaintiffs' motion for leave to file a third amended complaint is granted and I consider defendants' motion to dismiss as it relates to the amended complaint (attached to ECF No. 25 as exhibit 1).[2] To the extent plaintiffs' third

---

[2] Defendants' reply, filed after plaintiffs' motion to file a third amended complaint, expressly states that, even if plaintiffs are granted leave to file a third amended complaint, plaintiffs' proposed third amended complaint should be dismissed. Throughout their reply, defendants assert arguments explaining why plaintiff's third amended complaint cannot survive. (*See* ECF No. 28, pp. 2, 4–5, 6, 7, 10, 12). Accordingly, there is no prejudice to defendant in considering their motion to dismiss in relation to the third amended complaint.

amended complaint includes a new defendant (Ram Javia) and new claims (Counts V–VII), defendants may file a motion to dismiss or an answer in response to these new additions.

## A. FLSA

The FLSA requires a covered employer to pay its employees "at a rate not less than one and one-half times the regular rate at which he is employed" for work performed beyond the typical forty hour workweek. 29 U.S.C. § 207(a)(1). To sufficiently plead an FLSA claim, and unlock FLSA's overtime protections, a plaintiff must plead that they either (1) engage in "commerce or in the production of goods for commerce" (termed "individual coverage"); or (2) work for an employer "engaged in commerce or in the production of goods for commerce" (termed "enterprise coverage"). *Id.*; § 203(s)(1)(A)(i)–(ii). Defendants contend that plaintiffs have failed to plead either of these two conditions. I agree.

First, I find plaintiffs have failed to allege enterprise coverage. The FLSA defines an employer qualifying for enterprise coverage as one:

(i) [who] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .

§ 203(s)(1)(A)(i)–(ii). The term "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States and any place outside thereof." 29 U.S.C. § 203(b). Accordingly, to show enterprise coverage, a plaintiff must adequately plead two facts: (1) their employer engages in commerce or the production of goods for commerce; and (2) their employer has yearly revenues of at least $500,000. For the first requirement, "it is well established that local business activities fall within the FLSA when an enterprise employs

5

workers who handle goods or materials that have moved or have been produced in interstate commerce." *Brock v. Hamad*, 867 F.2d 804, 808 (4th Cir. 1989). Here, plaintiffs' third amended complaint is devoid of any allegation that defendants employed workers "who handle goods or materials moved or produced in interstate commerce." Although plaintiffs allege they delivered donuts and similar products from Maryland production facilities to Dunkin' Donuts chain locations in Maryland, there is no allegation that these products originated in or subsequently moved in interstate commerce. (*See* ECF No. 25, Ex. 1, ¶ 12). Indeed, plaintiffs admit the products "would be sold at retail or consumed at the Maryland retail locations"—precluding the possibility of movement in interstate commerce after delivery. *Id.* at ¶ 15. Accordingly, plaintiffs fail to plead enterprise coverage.[3]

Plaintiffs also fail to plead individual coverage. To qualify for individual coverage, a plaintiff must show he or she was "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Individual coverage is characterized "not [by] whether the employee's tasks have some remote effect on interstate commerce, but whether the employee participated in the channels of commerce." *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 525 (D. Md. 2006). There is no such showing here—plaintiffs' third amended complaint lacks any allegations showing plaintiffs participated in commerce or produced goods for commerce. Instead, plaintiffs emphasize the fact that they never participated in interstate commerce. For instance, plaintiffs state:

> Plaintiffs were employed specifically and exclusively to work pursuant to an arrangement and an agreement to deliver donuts and similar products from a production facility located in Elkridge, Maryland, to retail locations, all of which, without exception, were located in the State of Maryland . . . . Plaintiffs were assigned by Defendants specific routes with multiple retail locations, all, without

---

[3] I note, however, that plaintiffs have pled that each of the defendants had yearly revenues of at least $500,000. (*See* ECF No. 25, Ex. 1, ¶¶ 23–26).

6

> exception, in the State of Maryland, to which they were to make deliveries of donuts and other similar products from the Baltimore facility, where the products were manufactured . . . . None of the routes involved deliveries to any location outside the State of Maryland or any travel to any location outside the State of Maryland by Plaintiffs. The routes were such that Plaintiffs did not have to, and could not reasonably be expected to, ever cross any borders of the State of Maryland while on duty, be it while making deliveries or on return trips. Over the course of Plaintiffs' employment by Defendants, Plaintiffs never had to travel outside the State of Maryland or cross any borders of the State of Maryland while on duty.

(ECF No. 25, Ex. 1, ¶¶ 12, 15). Despite their admissions, plaintiffs argue that, by supplying Dunkin' Donuts, a national chain, they have participated in commerce. Plaintiffs then undercut that very same argument by alleging that the products they delivered to Dunkin' Donuts locations "would be sold at retail or consumed at the Maryland retail locations."[4] *Id.* at ¶ 15. Again, this allegation shows plaintiffs neither participated in commerce nor produced goods travelling in commerce; consequently, plaintiffs fail to plead individual coverage under the FLSA.

Statutory coverage is an essential element of an FLSA claim. *Ramirez v. Amazing Home Contractors, Inc.*, No. 14-2168, 2015 WL 4282130, at *2 (D. Md. July 14, 2015). Accordingly, plaintiffs' failure to plead individual or enterprise coverage is fatal to their FLSA claim and that claim is dismissed.[5]

---

[4] Plaintiffs argue that they participated in commerce by fueling trucks with ethanol produced in other states and using telephones to communicate across interstate lines. (*See* ECF No. 24, p. 3). But plaintiffs fail to assert these allegations in their third amended complaint; thus, they are facts outside the pleadings, which cannot be considered at this preliminary stage. Fed. R. Civ. P. 12(d). Even assuming *arguendo* plaintiffs pled these facts in their complaint, they are insufficient to establish individual coverage. *See Russell*, 430 F. Supp. 2d at 525–27 (holding that an employee who communicated across state lines with vendors, customers, and credit card companies, interacted with out-of-state customers, and handled goods moved in interstate commerce, did not qualify for individual coverage under the FLSA).

[5] While, in light of plaintiffs' continuing failure to plead all elements of a FLSA case, I am hesitant to permit further amendments, I find that another amendment to plaintiffs' complaint

## B. Supplemental Jurisdiction

Defendants argue for dismissal of plaintiffs' remaining claims on the basis of Fed. R. Civ. P. 12(b)(1). Plaintiffs' assertion of federal subject matter jurisdiction was based entirely on their FLSA claim, which is now dismissed. This court's competency to hear plaintiffs' state law claims (Counts II–VII in the third amended complaint) was originally premised on supplemental jurisdiction. Now that this court has "dismissed all claims over which it has original jurisdiction," it has discretion over whether to continue exercising supplemental jurisdiction over plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (internal citations omitted). Given the possibility that plaintiffs may yet remedy their defective FLSA claim, and the volume of briefing already devoted to the case in this court, considerations of judicial economy counsel in favor of retaining jurisdiction. Accordingly, using the "wide discretion" afforded to it when considering the exercise of supplemental jurisdiction, this court denies defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Shanaghan*, 58 F.3d at 110.

## C. Individual Liability

Finally, defendants seek to dismiss plaintiffs' claims alleging individual liability under the MWPCL and MWHL against Valeri Biganishvili, David Chkhartishvili, and Besiki Chkhartishvili (collectively "individual defendants").[6] I deny defendants' motion

---

may not be futile. Plaintiffs may file an amended complaint within 15 days of the entry of this opinion.

[6] Plaintiffs add another individual, Ram Javia, as a defendant in their third amended complaint. As noted above, Javia retains the right to file a motion to dismiss in response to plaintiffs' claims.

8

to dismiss as it relates to plaintiffs' claims against individual defendants under the MWPCL and MWHL.

The MWHL, Maryland's equivalent of the FLSA, defines the term "employer" as "a person who acts directly or indirectly in the interest of another employer with an employee"; the FLSA defines the term "employer" almost identically as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Compare* Md. Code Ann., Lab & Empl. § 3-401(b) *with* 29 U.S.C. § 203(d). Hence, Maryland courts applying the MWHL interpret the term "employer" *in pari materia* with the FLSA and I use FLSA case law to guide my MWHL analysis in this case. *See, e.g., Newell v. Runnels*, 967 A.2d 729, 771–72 (Md. 2009) (using FLSA case law to determine whether a defendant qualifies as an employer under the MWHL and FLSA).

Although the MWPCL elucidates a narrower definition of the term "employer" ("any person who employs an individual in the State or a successor of the person") than the FLSA and MWHL, the Maryland Court of Special Appeals has held that FLSA case law also governs the determination of who qualifies as an "employer" under the MWPCL. *Campusano v. Lusitano Const. LLC*, 56 A.3d 303, 308 (Md. App. 2012) (holding that the FLSA's economic realities test applies in interpreting who qualifies as an "employer" under the MWPCL). Accordingly, FLSA case law also informs my evaluation of plaintiffs' claims against individual defendants under the MWPCL.

The FLSA's definition of employer is interpreted broadly to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) ("[The FLSA] defines the verb 'employ' expansively to mean 'suffer or permit to work.' "); *Schultz v. Capital Int'l Sec., Inc.*,

9

466 F.3d 298, 304 (4th Cir. 2006) ("[The FLSA] should be broadly interpreted and applied to effectuate its goals.") (internal citations and quotation marks omitted). In accord with that purpose, the employer-employee designation under the FLSA expands beyond "strict application of traditional agency law principles." *Nationwide*, 503 U.S. at 326. Accordingly, any individual who acts "directly or indirectly in the interest of an employer in relation to an employee" is jointly and severally liable for any wages owed to an employee. 29 U.S.C. § 203(d); *see also Schultz*, 466 F.3d at 305 ("Separate persons . . . may be deemed joint employers under the FLSA.").

To determine whether an employer-employee relationship existed, courts consider the "economic realities" of the relationship between the putative employer and employee. *See id.* at 306. Under the economic reality test, the following facts shed light on whether an individual qualifies as an employer: (1) "the authority to hire and fire employees"; (2) "supervise[] and control[] work schedules or employment conditions"; (3) "determine[] the rate and method of payment;" and (4) "maintain[] employment records." *Khalil v. Subway at Arundel Mills Office Park, Inc.*, No. 09-158, 2011 WL 231793, at *2 (D. Md. Jan. 24, 2011). The economic realities test is a totality of the circumstances test, and no one factor is dispositive. *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 267 (D. Md. 2014).

Here, plaintiffs' third amended complaint contains sufficient allegations showing that individual defendants exercised economic control over defendants. First, plaintiffs allege that the three defendants were the sole owners of Global Dynamic Transportation, LLC ("Global Dynamic") and served as the only managers and officers of Global Dynamic. *Id.* at ¶¶ 27–28. Plaintiffs also allege that Valeri Biganishvili served as Managing Member of Global Dynamic. *Id.* at ¶ 29. Plaintiffs allege that all individual defendants "owned and controlled the trucks that

Plaintiffs drove," and determined plaintiffs' schedules, routes, itineraries, and personally directed plaintiffs' work. *Id.* at ¶ 31. Further, plaintiffs allege each individual defendant played a role in determining plaintiffs' pay. *Id.* at ¶ 35. As additional evidence, plaintiffs allege that two of the three individual defendants, Valeri Biganishvili and Besiki Chkhartishvili, signed plaintiffs' paychecks. *Id.* at ¶ 34. Plaintiffs also claim each of the individual defendants took part in the termination of plaintiffs and subsequent attempts to resolve the employment dispute between defendants and plaintiffs. *Id.* at ¶¶ 32, 33. For instance, when plaintiffs sought overtime pay and back pay, individual defendants refused to pay their wages. *Id.* at ¶ 40.

Taking these allegations as true, it is at least plausible that individual defendants had economic control, *i.e.*, authority to hire and fire employees, supervise and control work schedules or employment conditions, determine payment, and maintain employment records. *See Khalil*, 2011 WL 231793, at *2. Application of the economic realities standard is "necessarily a fact-intensive inquiry;" therefore, at this early stage of proceedings, the MWHL and MWPCL claims against individual defendants cannot be dismissed. *Smith v. ABC Training Ctr. of Maryland, Inc.*, No. 13-306, 2013 WL 3984630, at *8 (D. Md. Aug. 1, 2013).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to file a third amended complaint is granted. Defendants' motion to dismiss is granted in part and denied in part.

_____11/12/2015_____   _____/s/_____
Date                     J. Frederick Motz
                         United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 NOV 13 PH 5:48
CLERK'S OFFICE
AT BALTIMORE
DEPUTY